MATTER OF H—

In VISA PETITION Proceedings

A-12378722

*Decided by Board May 1, 1962*

Marriage—Valid-where-performed polygamous marriage not recognized for
immigration purposes—Effect of subsequent divorce from first spouse.

The polygamous marriage of beneficiary and petitioner which is valid in Jor-
dan where performed cannot be recognized as a valid marriage for immi-
gration purposes and will not support a visa petition for nonquota status on
behalf of the beneficiary because the marriage is repugnant to United States
public policy. This invalidity is not altered by beneficiary's divorce of first
spouse subsequent to the second (polygamous) marriage.

### BEFORE THE BOARD

**DISCUSSION:** The case comes forward on appeal from the order
of the District Director, New York District, dated March 2, 1962,
denying the visa petition for the following reasons: the documents
submitted by the petitioner in behalf of the beneficiary reflect that
they were married on July 16, 1961; however, the beneficiary's di-
vorce certificate does not indicate that his first marriage was ter-
minated prior to the petitioner's marriage to the beneficiary; and
in view thereof, the petitioner has not established that her marriage
is valid.

The record shows that the petitioner is a native-born citizen of
the United States, born February 5, 1945, at New York. Her birth
certificate discloses that her parents were born in Jerusalem. She
seeks nonquota status on behalf of the beneficiary, a native and
citizen of Jordan, 37 years old, male. Both parties are of the
Moslem faith. Evidence has been submitted that the parties were
married on July 16, 1961, the ceremony being performed by the legal
mazoun of the Amman Sharia Court at Jabal el-Nasr, Amman,
Jordan. The beneficiary was at the time of the ceremony married,
the petitioner being his second wife; multiple or polygamous mar-
riages are permitted among persons of the Moslem faith according
to the laws of the Hashemite Kingdom of Jordan. Subsequently, on
November 21, 1961, the beneficiary divorced his first wife as evidenced

by the registration of such divorce at the Sharia Islamic Court at Amman, Jordan.

The question presented is whether the polygamous marriage of the parties, which was valid where performed, constitutes a legal marriage for immigration purposes and whether the subsequent divorce by the beneficiary of his first wife affects the status of the parties. The general rule is that the validity of a marriage is determined by the law of the place where it is contracted or celebrated; if valid there, it is valid everywhere.[1] An exception to the general rule, however, is ordinarily made in the case of marriages repugnant to the public policy of the domicile of the parties, in respect to polygamy, incest, or miscegenation, or otherwise contrary to its positive laws. Such cases involve marriages which are repugnant to the public policy of the domicile of the parties or to the laws of nature as generally recognized in Christian countries.[2]

The question has been asked whether a marriage contracted in conformity with the local law, in a country allowing polygamy, would be recognized by the courts of this country. Anglo-American writers generally answer this question emphatically in the negative. They say that such a marriage is not a marriage as understood among the Christian nations and that its recognition would be opposed to sound public policy.[3] Whatever the particular theory of international law or conflict of laws followed, all recognize that effect will not be given to "foreign" law insofar as its application would conflict (1) with any prohibitory statute of the state in which the suit is brought; or (2) with the public policy of such state. Questions involving polygamous marriage demand a careful consideration of the facts of each particular case and of the conflicting policies involved, with a view to discovering whether the recognition of the foreign law can be brought into harmony with the legal order of the forum.[4]

The recognition or nonrecognition of the existence of a polygamous marriage depends on the purpose for which such recognition is invoked.[5] In distinguishing between matters regarded as essential and those of pure formality, resort must be had to a functional test, namely, what is the reason or purpose of a particular legal system in

---

[1] Beale, *Conflict of Laws* (1935 ed.), Vol. 2, p. 69; *Ng Suey Hi v. Weedin*, 21 F.2d 801 (C.A. 9, 1927); *Cosulich Societa Triestina di Navegazione v. Elting*, 66 F.2d 534, 536 (C.A. 2, 1933); 55 C.J.S. 811, 812; *Matter of P—*, 4—601 (A.G., 1952).

[2] *Ng Suey Hi v. Weedin*, *supra* [1]; 55 C.J.S. 813, 814; Story, *Conflict of Laws* (8th ed., 1883), p. 188.

[3] Minor, *Conflict of Laws* (1901), sec. 75; Dicey, *Conflict of Laws* (3rd ed., 1922), p. 389; Wharton, *Conflict of Laws* (3rd ed., 1905), secs. 130, 132; Foote, *Private International Law* (6th ed., 1922), pp. 68, 69.

[4] Lorenzon, *Conflict of Laws* (Yale University Press, 1947), pp. 394–395, 401.

[5] Graveson, *Conflict of Laws* (3rd ed., 1955), p. 121.

imposing any requirement for marriage? Applying this test, it will be found that whether or not any requirement of marriage is an essential or formality depends on the degree or intensity of the public or social interest which it embodies and expresses.[3] There have been exceptions from the nonrecognition of polygamous marriages, such as American Indian tribal marriages, which have been upheld *in the absence of a federal statute* rendering such tribal laws and customs invalid. While the statement has been made in English decisions to the effect that no recognition will be given to foreign marriages which are not a monogamous union of one man and one woman for life, nevertheless, such marriages, valid under the law governing them, have at times been recognized as valid in this country but such recognition does not involve a recognition of the right to exercise here all the incidents usual to the marriage relationship.[7]

The public policy of the United States against polygamists and polygamy as expressed in the immigration laws has been a part of the laws since the Act of March 3, 1891 (26 Stat. 1084), which added polygamists to the list of excludables under the immigration laws. Thereafter, every amendatory act has included polygamists among the inadmissible classes and the present statute prohibits the admission of aliens who are polygamists or who practice polygamy or advocate the practice of polygamy.[8] In view of this statutory expression of a strong federal public policy against polygamy, it is concluded that the polygamous marriage in the instant case falls within the well-recognized exception to the general rule that the validity of a marriage is determined by the law of the place of celebration. It is concluded that this polygamous marriage cannot be recognized as a valid marriage for immigration purposes and will not support a visa petition for nonquota status on behalf of the beneficiary. The fact that the prior marriage of the beneficiary was dissolved subsequent to the second polygamous marriage would not appear to affect the nonrecognition of the polygamous marriage. The appeal will be dismissed.

ORDER: It is ordered that the appeal from the denial of the visa petition be and the same is hereby dismissed.

---

[6] *Idem*, p. 125.

[7] Goodrich, *Conflict of Laws* (3rd ed., 1949), pp. 370, 373.

[8] Section 212(a)(11) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(11)).